**Paul STEWART, Individually, and on behalf of all other persons similarly situated, Plaintiff,**

v.

**REMCO ENTERPRISES, INC., d/b/a Remco TV Rental Company, Defendant.**

Civ. No. 79–0–15.

United States District Court, D. Nebraska.

March 3, 1980.

---

361

362

Steven D. Wolf, Omaha, Neb., for plaintiff.

Jim L. Kuhn, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court upon the defendant's motion for summary judgment [Filing # 10].

The plaintiff brings this action under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. § 226, and more specifically 15 U.S.C. §§ 1602, 1638 and 1667 and 12 C.F.R. §§ 226.8(b) & (c). Jurisdiction is conferred without regard to the amount in controversy or citizenship of the parties under the provisions of 15 U.S.C. § 1640.

On August 31, 1978, the plaintiff entered into an agreement with the defendant for the "rental" of a 19-inch color television combo. The rental agreement provided for an initial rental period of one week and weekly payments of $21.00 per week. Although the rental agreement obligated the defendant to transfer ownership of the television to the plaintiff for no additional consideration if the agreement was renewed for seventy-eight consecutive weeks, the rental agreement further provided:

*TERMINATION BY RENTER* : Renter may terminate this agreement at the end of any rental period by return of property to owner. Renter is *required* to rent the property for only one rental period.

The defendant contends that the rental agreement in question does not fall within the scope of the Truth-in-Lending Act or Regulation Z. Specifically, it asserts that the rental agreement is neither a "credit sale" as defined in 15 U.S.C. § 1602(g) nor a "consumer lease" within the meaning of 15 U.S.C. § 1667(1).

*Section 1602*

In § 1602(g), the term "credit sale" is defined as follows:

(g) The term "credit sale" refers to any sale with respect to which credit is extended or arranged by the seller. The term includes any contract in the form of a bailment or lease *if* the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract. (Emphasis added).

15 U.S.C. § 1602(g).

An identical definition of "credit sale" is contained in Regulation Z, 12 C.F.R. § 226.-2(t).

As the language of § 1602(g) makes clear, two requirements must be met in order for a transaction to be considered a "credit sale." The first requirement is that the "lessee" must have contracted "to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property . . . involved . . . ."

However, in this case, the rental agreement in question provides for a weekly rental rate of $21.00. The termination clause contained in the agreement provides that the renter is *required* to rent the property *for only one week.* The renter has the right to terminate the agreement at the end of any rental period by return of the prop-

erty to the owner. Thus, the sole obligation of the plaintiff under this agreement is to pay $21.00—hardly the aggregate value of the television set involved. Accordingly, it is clear that the rental agreement in question does not fall within the meaning of the term "credit sale" as defined in § 1602(g).

 This conclusion is buttressed by various letter opinions of the Federal Reserve Board. The staff of the Federal Reserve Board has stated that the "contract to pay" language is one of two criteria that must be met in order for a lease to be considered a "credit sale." FRB Letter No. 761 (CCH Cons.Cred.Guide ¶ 31,083); FRB Letter No. 750 (CCH Cons.Cred.Guide ¶ 31,069); FRB Letter No. 1192 (CCH Cons.Cred.Guide ¶ 31,623). Although the interpretations of the staff of the Federal Reserve Board are not binding on this Court, FRB staff opinion letters interpreting regulations promulgated pursuant to the Act are entitled to "substantial deference." *Gantt v. Commonwealth Loan Co.*, 573 F.2d 520, 523 (8th Cir. 1978). Other courts have also concurred in the Federal Reserve Board's interpretations of the "contracts to pay" language. *In re Turner*, Bky. No. 3–78–1135(D) (D.Minn. March 19, 1979); *Clark v. Aquarius TV Rental, Inc.*, No. CA4–7–133 (N.D.Tex. Oct. 18, 1977); *Griggs v. Easy TV & Rental, Inc.*, No. C75–2509A (N.D.Ga. Apr. 8, 1976); *Terrell v. Mr. T's Rental*, No. C75–2053A (N.D.Ga. June 4, 1976).

*Section 1667*

In § 1667(1), the term "consumer lease" is defined as follows:

(1) The term "consumer lease" means a contract in the form of a lease or bailment for the use of personal property by a natural person *for a period of time exceeding four months*, and for a total contractual obligation not exceeding $25,-000, primarily for personal, family, or household purposes, whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease, except that such term shall not include any credit sale as defined in section 1602(g) of this title. Such term does not include a lease for agricultural, business or commercial pur-

poses, or to a government or governmental agency or instrumentality, or to an organization. (Emphasis added).
15 U.S.C. § 1667(1).

An identical definition of "consumer lease" is found in Regulation Z, 12 C.F.R. § 226.-2(mm).

As the Court noted previously, the plaintiff's lease was clearly a week-to-week rental agreement with an initial rental period of one week. Thus, the plaintiff, not being obligated "for a period of time exceeding four months," did not enter into a "consumer lease" subject to the requirements of the Truth-in-Lending Act or Regulation Z.

The minimum obligation "for a period of time exceeding four months" is a requirement that the staff of the Federal Reserve Board states must be met in order for a lease to be considered a "consumer lease." FRB Letter No. 1169 (CCH Cons.Cred. Guide ¶ 31,556). This interpretation has been concurred in by other courts. *In re Turner, supra; Smith v. ABC Rental Systems*, No. 77–2733D (E.D.La. Aug. 11, 1978).

Moreover, the fact that the plaintiff had the right to extend the rental agreement on a week-to-week basis does not make the lease a "consumer lease."

Extensions of existing leases are governed by § 226.15(c) of Regulation Z, which provides as follows:

(c) Renegotiations or extensions. If any existing lease is renegotiated or extended, such renegotiation or extension shall be considered a new lease subject to the disclosure requirements of this Part, except that the requirements of this paragraph shall not apply to (1) a lease of multiple items where a new item(s) is provided or a previously leased item(s) is returned, and the average payment allocable to a monthly period is not changed by more than 25 per cent, or (2) a lease which is extended for not more than six months on a month-to-month basis or otherwise.

In an opinion letter, the staff of the Federal Reserve Board indicates that no disclosures are required even if the lease is extended for more than six months on a month-to-month basis where the initial period of lease

is less than four months. FRB Letter No. 1217 (July 15, 1977). Indeed, in this case, the plaintiff's lease was not extended for even two months.

*Conclusion*

In sum, the Court finds that the rental agreement in question does not fall within the scope of the Truth-in-Lending Act or Regulation Z. The foregoing discussion makes clear that the agreement was neither a "credit sale" as defined in § 1602(g), nor a "consumer lease" as defined in § 1667(1). Accordingly, the Court concludes that the defendant is entitled to summary judgment.

An order shall be issued contemporaneously with this Memorandum Opinion.